# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK JONES, SR., | Case No. 1:04-cv-06318-LJO-DLB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, CONCLUDING THIS ACTION IN ITS ENTIRETY |
| v. | |
| ANGEL MARTINEZ, | |
| Defendant. | (Doc. 79) |
| | FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED |
| / | (Doc. 82) |
| | OBJECTIONS DUE WITHIN 30 DAYS |

**I.      Findings and Recommendations**

   **A.      Procedural History**

Plaintiff Frederick Jones, Sr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed on September 27, 2004, against Defendant Angel Martinez ("Defendant") for violation of the Eighth Amendment.[1]

On April 10, 2009, Defendant filed a motion for summary judgment. (Doc. 79, Def.'s Mot. For Summ. J.) On May 4, 2009, Plaintiff filed his opposition. (Doc. 81, Pl.'s Opp'n to

---
[1] The Court dismissed all other defendants and claims for failure to state a claim upon which relief may be granted.

1

Def.'s Mot. For Summ. J.)[2] On May 5, 2009, Defendant filed his reply to Plaintiff's opposition. (Doc. 80, Def.'s Reply to Pl.'s Opp'n.) On May 26, 2009, Plaintiff filed his own motion for summary judgment. (Doc. 82, Pl.'s Mot. For Summ. J.) On June 8, 2009, Defendant filed his opposition. (Docs. 83 and 84, Def.'s Opp'n to Pl.'s Mot. For Summ. J.) Plaintiff did not file a reply. The matter is deemed submitted. L. R. 78-230(m).

### B.   Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on June 22, 2005. Klingele v. Eikenberry, 849 F.2d409 (9th Cir. 1988). (Doc. 26.)

2

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

C. **Plaintiff's Motion for Summary Judgment**

Plaintiff filed his motion for summary judgment on May 26, 2009. Plaintiff mailed the motion on May 18, 2009. Defendant contends that Plaintiff's motion should be denied because Plaintiff's motion was not submitted in a timely manner. (Doc. 83, Def.'s Opp'n 1.) Defendant contends that pursuant to the operative scheduling order filed on December 16, 2008, dispositive motions were due by April 10, 2009. (Doc. 83, Def.'s Opp'n 1.) Defendant contends that Plaintiff has demonstrated no good cause to allow his motion to be heard and accordingly Plaintiff's motion should be denied. (Doc. 83, Def.'s Opp'n 1.)

Plaintiff's motion was untimely filed, and Plaintiff has demonstrated no good cause to submit his motion in an untimely manner. Because Plaintiff has failed to file his motion for summary judgment in a timely manner, the Court HEREBY RECOMMENDS that Plaintiff's motion for summary judgment, filed on May 26, 2009, be DENIED.

D. **Undisputed Facts In Support Of Defendant's Motion**[3]

1. On August 31, 2004, Plaintiff was convicted in the Kings County Superior Court of the

---

[3] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). In this instance, Plaintiff did not comply with the Local Rule. Plaintiff submitted an Opposition, but did not admit undisputed facts or deny facts that are disputed by citing to any document in support of the denial. Therefore, Defendants' Statement of Undisputed Facts is accepted except where contradicted by Plaintiff's verified complaint and opposition. Plaintiff's verified complaint and opposition may be treated as opposing affidavits to the extent that they are verified and set forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985).

Plaintiff contends that Defendant and others discriminated against Plaintiff by housing him in a disciplinary cell for over a year, depriving him of sleep, kicking/banging on his door, flicking lights on and off, depriving him of fresh air, frivolously writing him up resulting in loss of privileges, visitation, phone, yard, law library, and commissary. (Doc. 81, Pl.'s Opp'n ¶ 3.) Plaintiff contends that these actions were motivated by Plaintiff's conviction for attempted murder of a fellow deputy. (Pl.'s Opp'n ¶ 3.) Defendant contends that none of Plaintiff's arguments are relevant to the motion, since this action is proceeding only against Defendant on Plaintiff's Eighth Amendment claim. (Doc. 82, Def.'s Reply 1:23-2:6.) Defendant is correct. None of Plaintiff's allegations here are relevant to the current action. Accordingly, Plaintiff's objection on this ground should be denied.

Plaintiff also disputes several of Defendant's undisputed facts by listing the number of the fact he disputes. (Pl.'s Opp'n ¶¶ 7-8.) Defendant contends that Plaintiff has failed to point to any facts beyond the pleadings to dispute Defendant's facts. (Def.'s Reply 2:8-3:19.) Plaintiff does not cite to any affidavits, discovery materials, or other evidence in support of his disputes. Plaintiff's objection on this ground should be denied.

|   |     |                                                                                      |
|---|-----|--------------------------------------------------------------------------------------|
| 1 |     | attempted murder of a peace officer, shooting at an occupied vehicle, robbery in the first |
| 2 |     | degree, assault with a deadly weapon, and burglary in the first degree.             |
| 3 | 2.  | Pending his sentencing, Plaintiff was incarcerated at the Kings County main jail facility. |
| 4 | 3.  | On September 6, 2004, Plaintiff was housed in Cell 10, a single occupancy jail cell. |
| 5 | 4.  | At approximately 11:00 a.m., the main jail detentions staff was engaged in conducting |
| 6 |     | cell searches for contraband and non-compliant materials.                           |
| 7 | 5.  | Deputy Chris Berna contacted Plaintiff at his jail cell and instructed him to get up and get |
| 8 |     | dressed.                                                                            |
| 9 | 6.  | Plaintiff understood that he was required to obey the commands of the jail staff.   |
| 10 | 7. | At approximately 11:10 a.m., Sergeant Kimberly Pedreiro contacted Plaintiff at his jail |
| 11 |    | cell, and directed him to get dressed and put on his restraints so that a search of his cell |
| 12 |    | could be performed.                                                                  |
| 13 | 8. | However, Plaintiff told Sergeant Pedreiro that he would not put on his restraints, and that |
| 14 |    | he would not allow any jail staff to enter his cell.                                |
| 15 | 9. | Sergeant Pedreiro informed Sergeant Gilbert Jones from the detentions staff of Plaintiff's |
| 16 |    | refusal to comply with her directives.                                              |
| 17 | 10.| Sergeant Jones, with other detentions deputies, went to Plaintiff's cell and explained that |
| 18 |    | he would have to exit so that a cell search could be performed.                     |
| 19 | 11.| Plaintiff stated that he would not come out of his cell, but rather would throw out any |
| 20 |    | extra clothing that he possessed.                                                   |
| 21 | 12.| Plaintiff was informed that this was unacceptable, and was told to put on his restraints |
| 22 |    | and come out of his cell.                                                           |
| 23 | 13.| However, Plaintiff still refused to put on his restraints and come out.             |
| 24 | 14.| Defendant also came by Plaintiff's cell and attempted to reason with Plaintiff, to no avail. |
| 25 | 15.| Sergeant Jones made a decision to use the pepper ball rifle and O.C. fogger to force |
| 26 |    | compliance from Plaintiff.                                                          |
| 27 | 16.| The hatch to Plaintiff's cell was opened in order to apply the chemical agents.     |
| 28 | 17.| Plaintiff contends that he was hit by O.C. spray on his body while in his cell, but he |

|     |     |     |
| --- | --- | --- |
| 1   |     | voluntarily stood in front of the hatch during this operation. |
| 2   | 18. | Plaintiff then placed a blanket over the hatch door to thwart the application of the chemical agents. |
| 4   | 19. | The pepper ball rounds were ineffective because Plaintiff put his blanket against the door. |
| 5   | 20. | Defendant attempted to move the barrier with a collapsible baton, but this method was ineffective. |
| 7   | 21. | At this point, the jail staff obtained a mid-range baton to use to move the barrier covering the hatch door. |
| 9   | 22. | Plaintiff contends that a detentions deputy, through the hatch door, moved the blanket over with the baton, and made a jabbing motion toward Plaintiff's mid-section in an effort to move Plaintiff out of the way. |
| 12  | 23. | Plaintiff did not see Defendant holding the midrange baton, but believes that Defendant was holding this baton because he said "move out of the way." |
| 14  | 24. | However, it was Deputy Jeremy Garcia, not Defendant, who was holding the mid-range baton. |
| 16  | 25. | Plaintiff voluntarily stayed in front of the hatch door. |
| 17  | 26. | Plaintiff claims that he was struck in the mid-section, thighs, and testicles.[4] |
| 18  | 27. | Plaintiff then grabbed the midrange baton and pulled it into his cell. |
| 19  | 28. | When asked to return the baton, Plaintiff refused to comply. |
| 20  | 29. | Plaintiff told the jail staff that they would have "to do what (they) have to do" to bring him out. |
| 22  | 30. | Pepper balls were shot into Plaintiff's cell by Defendant. |
| 23  | 31. | Plaintiff voluntarily chose to stay in his cell and mitigate the discomfort by wrapping himself in a wet cloth. |
| 25  | 32. | At this point, Plaintiff was in violation of the following Jail Rules: Rule 203 (Inmates will |

---

[4] Defendant categorizes Plaintiff being struck in the mid-section, thighs, and testicles as suffering no injuries. When asked whether he felt sick or nauseous after being struck, Plaintiff in his deposition responded, "Yes." (Pl.'s Dep. 78:14-16.) Thus, injuries did occur, even if the injury is not very serious.

show no disrespect toward any member of the jail staff or any jail visitor, nor shall any derogatory remarks be made in the presence of any jail staff member. Inmates shall obey all direction from jail staff members without conflict.); Rule 211 (No inmate is to engage in an action which would endanger the safety of an employee, another inmate, another inmate, or violate the security of the facility.); Rule 307 (Any conduct not specifically listed that creates a disturbance within the jail or disrupts the normal function of the jail is prohibited.); Rule 310 (Inmates shall not possess any type of manufactured or self-made weapon).

33. After banging the baton against the cell door and cussing at the detentions staff, Plaintiff asked to speak with Commander Jolene Vento.

34. Sergeant Jones called Commander Jolene Vento by telephone and informed her that Plaintiff was in his cell and in control of a weapon.

35. Commander Vento authorized a Special Emergency Response Team ("SERT") callout.

36. Commander Vento arrived at the main jail approximately twenty minutes after having been contacted by Sergeant Jones.

37. Commander Vento went to Plaintiff's cell and requested that Plaintiff return the baton and leave his cell peacefully.

38. However, Plaintiff still refused to come out of his cell.

39. At approximately 11:30 a.m., Defendant contacted Sergeant Dan Tolbert and informed him that a SERT call-out had been authorized.

40. Sergeant Jones called the members of the SERT who were not on duty and advised them that a SERT action was needed for Plaintiff.

41. Sergeant Dan Tolbert gathered with the SERT members at a trailer outside of the branch jail.

42. Defendant provided a detailed briefing as to Plaintiff's situation.

43. Sergeant Tolbert devised a plan to extract Plaintiff from his cell, whereupon two less-lethal (beanbag) shotguns would be utilized in front of the cell, and the SERT members would be placed in a regular stack with a shield.

| | |
|---|---|
| 1 | 44. At the main jail, Deputy Tolbert spoke with Commander Vento, who informed him that all attempts to gain compliance from Plaintiff had failed. |
| 3 | 45. Commander Vento authorized the SERT to extract Plaintiff from his cell. |
| 4 | 46. Through the hatch door, Sergeant Tolbert deployed a sting-ball grenade into the cell and closed the hatch. |
| 6 | 47. Plaintiff was not injured by the detonation of the sting-ball grenade. |
| 7 | 48. After the detonation of the grenade, the SERT made its entry into Plaintiff's cell through a stacked formation. |
| 9 | 49. Plaintiff had placed a black plastic garbage bag over the cell's lights, which made it difficult to locate and gain control of Plaintiff. |
| 11 | 50. The lead officer with the shield contacted Plaintiff, at which point Plaintiff moved to the side and laid down on his mattress. |
| 13 | 51. Plaintiff contends that three SERT team members jumped on top of him when he was on his mattress, but not Defendant. |
| 15 | 52. Other than swelling to his back, Plaintiff suffered no injuries. |
| 16 | 53. The SERT members secured Plaintiff's legs and placed restraints on his legs. |
| 17 | 54. Plaintiff contends that handcuffs were then placed on his wrists behind his back, but not securely. |
| 19 | 55. Plaintiff contends that Defendant pulled Plaintiff out from the cell by the leg restraints and into the hallway. |
| 21 | 56. When Plaintiff was in the hallway, Defendant wrapped Orcutt Police Nunchakus, aka "nunchucks" ("OPNs") around Plaintiff's ankle as a pain compliance technique. |
| 23 | 57. The use of OPNs as a pain compliance technique is recognized in the correctional setting, and Defendant was trained in the use of this technique. |
| 25 | 58. The OPNs were applied to Plaintiff's ankle, as opposed to another body part, so as to inflict pain with the least risk of injury. |
| 27 | 59. It was Plaintiff's understanding that Defendant was attempting to roll him over. |
| 28 | 60. It was Defendant's understanding that handcuffs were not yet secured on Plaintiff. |

| | |
|---|---|
| 1 | 61. Defendant told Plaintiff that "you're going to do what we tell you to do now." |
| 2 | 62. According to Plaintiff, the OPN's were applied for approximately 10 seconds. |
| 3 | 63. Defendant did not apply the OPNs for any longer than necessary to gain Plaintiff's |
| 4 | compliance. |
| 5 | 64. Other than bruising, swelling, and a possible sprain, Plaintiff suffered no other injury as a |
| 6 | result of the application of the OPNs. |
| 7 | 65. After Plaintiff was rolled over, he was stood up by the detention staff. |
| 8 | 66. As Plaintiff was restrained in both handcuffs and leg irons, Commander Vento directed |
| 9 | that Plaintiff be placed into Cell 23, a safety cell. |
| 10 | 67. Plaintiff was then taken to Cell 23. |
| 11 | 68. Plaintiff contends that Deputy Berna tackled him, and that he was dragged part of the way |
| 12 | to Cell 23. |
| 13 | 69. Plaintiff was then placed on his stomach in Cell 23. |
| 14 | 70. Defendant removed Plaintiff's clothing with a knife due to O.C. spray contamination. |
| 15 | 71. Plaintiff claims that Defendant made a verbal threat to him regarding Plaintiff's genitals, |
| 16 | but no harm was done. |
| 17 | 72. After Plaintiff's clothing was removed, he was given a suicide blanket by Sergeant |
| 18 | Tolbert. |
| 19 | 73. Sergeant Tolbert asked Plaintiff if he had sustained any injuries. |
| 20 | 74. Plaintiff responded that he felt pain in his left shoulder, and both ankles. |
| 21 | 75. Plaintiff requested to see the nurse, and Plaintiff was checked by the jail nurse. |
| 22 | 76. The medical staff determined that other than the tearing of skin around his ankles, |
| 23 | Plaintiff was fine, and that he would be reevaluated during sick call. |
| 24 | 77. Approximately 20-30 minutes later, Plaintiff was brought over to the shower area for de- |
| 25 | contamination, without incident. |
| 26 | 78. Plaintiff was then brought back to his jail cell without incident. |
| 27 | // |
| 28 | // |

### E. Arguments

Defendant contends that there was no violation of the Eighth Amendment because the force used was for a valid purpose and there is no evidence that force was not applied in a good faith effort to restore discipline and order. Defendant further contends that even if there is a triable issue of fact, Defendant is entitled to qualified immunity.

#### 1. *Eighth Amendment*

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

A. <u>Use Of Chemical Agents</u>

Defendant contends that the use of chemical agents was necessary and proper. Defendant contends, and Plaintiff admits, that Plaintiff knowingly and willingly disobeyed several lawful orders. (Doc. 79-2, Mem. Of P. & A. In Support Of Def.'s Mot. For Summ. J. 7.) Defendant contends that the use of force is justified in dealing with non-compliant inmates, and the use of chemical agents in non-dangerous quantities to prevent a future danger does not constitute unnecessary and wanton infliction of pain. (Mem. Of P. & A. 7.) Defendant contends that no chemical agents were applied until after Plaintiff had refused to obey several orders. Plaintiff points to no evidence that contradicts Defendant's version of events.

Guards may use force only in proportion to the need of the situation. <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1251 (9th Cir. 1982). Force does not amount to a constitutional violation if it is applied in a good faith effort to restore discipline and order and not maliciously and sadistically for the purpose of causing harm. <u>Clement v. Gomez</u>, 298 F.3d 898, 903 (9th Cir. 2002) (citation and quotation omitted). Here, Plaintiff had refused several lawful orders to exit his cell. (Undisputed Facts (UF) 7-14.) Sergeant Jones decided to use chemical agents to force compliance. (UF 15.) The hatch to Plaintiff's cell was opened, and pepper ball rounds and O.C. fogger were applied. (UF 16.) Plaintiff then placed a blanket over the hatch to thwart the chemical agents. (UF 18.) Pepper ball rounds were ineffective. (UF 19.) The O.C. spray hit Plaintiff's body while he was in the cell, but Plaintiff voluntarily stood in front of the hatch door while chemical agents were applied. (UF 17.)

The need for application of the chemical agents was to compel compliance with several lawful orders by jail staff. The amount of chemical agents used does not appear to have been excessive. The threat perceived by the jail staff was reasonable under the circumstances. Plaintiff did not appear to have been seriously injured by the chemical agents. Chemical agents were applied in a good faith effort to maintain or restore discipline. <u>Clement</u>, 298 F.3d at 903. Accordingly, the use of chemical agents was not excessive force in violation of the Eighth Amendment.

//

B. Use Of Baton

Defendant contends, and the undisputed facts indicate, that it was Deputy Garcia, not Defendant, who reached through the hatch door with a baton and made a jabbing motion toward Plaintiff's mid-section to move Plaintiff out of the way. (Doc. 79-2, Mem. Of P. & A. 7:20-22; UF 24.) Plaintiff contends that Defendant is now blaming his subordinate for the attack, but points to no evidence to support his argument. (Pl.'s Opp'n ¶ 5.) Plaintiff did not actually see who was holding the baton, but assumed that it was Defendant. (UF 23.) Because Defendant did not use the baton on Plaintiff, Defendant cannot be found liable for any excessive force for the baton use.

Furthermore, the use of the baton was for a reasonable purpose: to move Plaintiff away from the hatch. (UF 22.) The baton use was not for the purposes of "unnecessary and wanton infliction of pain." Thus, the use of the baton is not actionable as an excessive force claim.

C. Forced Extraction Of Plaintiff From His Cell

Defendant contends that because Plaintiff was hostile and in possession of a weapon inside his cell, the use of the SERT was justified and necessary. (Mem. Of P. & A. 8:3-8.) Defendant contends that officers were subject to possible serious bodily injury from the weapon. (Mem. Of P. & A. 8:3-8.) Jail staff made reasonable efforts to resolve the matter peacefully, all of which Plaintiff refused to do. (Mem. Of P. & A. 8:3-8.)

Three SERT members entered Plaintiff's cell, which had the lights covered by a black garbage bag. (UF 48-49.) The lead officer with a shield contacted Plaintiff, at which point Plaintiff moved to the side and laid down on the mattress. (UF 50.) Plaintiff contends that the three SERT members jumped on Plaintiff, though Defendant was not among the SERT members. (UF 51.) Plaintiff was secured by leg restraints, and handcuffed behind his back. (UF 53-54.) Plaintiff suffered only swelling on his back. (UF 52.) Defendant then pulled Plaintiff out of the cell by the leg restraints and into the hallway. (UF 53.)

The initial actions of the SERT members did not include Defendant. Thus, jumping onto Plaintiff while he was on the mattress cannot constitute excessive force by Defendant since Defendant did not participate in the act. Furthermore, jumping onto Plaintiff was not done in a

12

malicious and sadistic manner. The purpose of jumping onto Plaintiff was to quickly subdue Plaintiff, who had possession of a weapon. Plaintiff also did not suffer any injuries other than swelling.

Dragging Plaintiff out by his leg restraints was not excessive force by Defendant. The purpose of the conduct was to extract Plaintiff from his cell. The use of force was in good faith to maintain or restore discipline. Plaintiff does not allege any physical injury from being dragged out of his cell. Accordingly, dragging Plaintiff out of his cell by his leg restraints is not excessive force in violation of the Eighth Amendment.

### D. Use Of OPNs

Defendant contends that the application of OPNs to Plaintiff's ankle, while inflicting pain, was not done in an unnecessary or wanton manner. (Mem. Of P. & A. 8:22-24.) Defendants contend that the use of OPNs is recognized in the correctional setting, and Defendant used this technique so as to minimize the risk of injury. (Mem. Of P. & A. 8:24-26.) Even if Plaintiff had been fully restrained at the time of the OPN's use, the application of the OPNs was not done to maliciously and sadistically cause harm. (Mem. Of P. & A. 8:26-9:1.) Defendant contends that Plaintiff was not injured. (Mem. Of P. & A. 9:4.)

Defendant wrapped the OPNs around Plaintiff's ankle as a pain compliance technique. (UF 56.) OPNs were applied to Plaintiff's ankle so as to inflict pain with the least risk of injury. (UF 58.) Plaintiff thought Defendant was trying to roll him over. (UF 59.) Defendant thought Plaintiff's handcuffs were not yet secured. (UF 60.) Defendant told Plaintiff that "you're going to do what we tell you to do now." (UF 61.) According to Plaintiff, the OPNs were applied for approximately 10 seconds. (UF 62.) Other than bruising, swelling, and a possible sprain, Plaintiff suffered no injury as a result of the application of the OPNs. (UF 64.)

Defendant's contention that Plaintiff suffered no injury is incorrect - bruising, swelling, and a possible sprain are injuries of some type. However, the use of force here was not done maliciously and sadistically. The use of OPNs by law enforcement is well-established. See Forrester v. City of San Diego, 25 F.3d 804 (9th Cir. 1994). Defendant thought Plaintiff's handcuffs were not yet secured, and thus applied the OPNs to roll Plaintiff over. Defendant

13

applied the OPNs for approximately 10 seconds. Plaintiff fails to dispute Defendant's declaration that Defendant did not apply the OPNs any longer than necessary to gain Plaintiff's compliance. Because Defendant did not apply the OPNs maliciously and sadistically for the purpose of causing harm, the use of OPNs is not actionable in this claim.[5]

Based on all the declarations and discovery materials, Defendant did not use excessive force on Plaintiff in violation of the Eighth Amendment. Plaintiff has failed to demonstrate a triable issue of material fact. The record as a whole cannot lead a rational trier of fact to find for Plaintiff as the nonmoving party. Matsushita, 475 U.S. at 586-87. The record instead indicates the use of force "was applied in a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 7. Accordingly, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment should be GRANTED.

### 2. *Qualified Immunity*

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (finding that courts should use discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first).

The other inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that

---

[5] Defendant also allegedly threatened to cut Plaintiff's testicles off with a knife. However, no harm resulted, and mere verbal threat alone does not give rise to a constitutional violation. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

14

what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Because Defendant is entitled to summary judgment on other grounds, the Court declines to address Defendant's qualified immunity claim.

## II. Conclusion and Recommendation

For the foregoing reasons, the Court HEREBY RECOMMENDS that:

1) Plaintiff's motion for summary judgment, filed on May 26, 2009, should be DENIED; and

2) Defendant's motion for summary judgment, filed on April 10, 2009, should be GRANTED, concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 28, 2009**        **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE